# Richmond.

## HOLLORAN v. MEISEL.

### January 29th, 1891.

1. EJECTMENT—*Evidence of title.*—In an action of ejectment a patent duly issued and authenticated, presented by plaintiff, is *prima facie* evidence of title in him.

2. IDEM—*Unexecuted patent.*—In such action paper writing purporting to be a patent from a governor of Virginia in colonial times, but unsigned and unsealed, is of course inoperative to show an outstanding title in a third person.

3. IDEM—*Instructions—Case at bar.*—Parcel of land was duly granted to plaintiff by the governor of this State by patent dated February 12th, 1887. It had been waste and unappropriated up to three years before, when defendants, to whom a lot adjacent to, but not embracing it, had been conveyed, fenced it in, and refused to surrender it to plaintiff. At the trial of his ejectment, after plaintiff had offered in evidence his patent, defendants put in evidence the said unsigned and unsealed paper, and the court instructed the jury that "if they believed from the evidence the patent dated October 12th, 1687, to Joshua Stapp for 277 acres of land included the land in controversy, then the land was not after that waste and unappropriated, and the grant of the land in controversy to plaintiff by the patent in evidence was void, and they must find for the defendants": *held*, instruction improper.

Error to judgment of circuit court of city of Richmond, rendered September 6th, 1888, in an action of ejectment, wherein James Holloran, the plaintiff in error, was plaintiff, and Philip Meisel, Sr., and Philip Meisel, Jr., were defendants. Opinion states the case.

*Edgar Allan*, and *Samuel Parrish*, for the plaintiff in error.

*W. B. & B. T. Crump*, for the defendant in error.

FAUNTLEROY, J., delivered the opinion of the court.

The record discloses that James Holloran, the plaintiff in error, obtained from the Commonwealth of Virginia a grant for a tract of land lying in the county of Henrico, near the city of Richmond, containing three and eighty-four one hundredth acres, on the 12th day of February, 1887; that the said grant was obtained after the said James Holloran had had the said land surveyed, and he had complied fully with all the requirements of the law; that the said land was and had been on the commons and waste and unappropriated up to three or four years before the rendition of the said judgment, and that no one laid claim thereto; that some three or four years before said judgment was rendered the defendants in error fenced the said land in, and were in possession of the same at the time of the institution of this suit, and that the said James Holloran demanded of them possession of the said land prior to the institution of the action of ejectment; that the said land had not been on the land books from 1813 to 1888, when it was put on by the said James Holloran; that, by deed dated June 5th, 1888, Thomas E. McCorkle and wife conveyed to Philip Meisel a parcel of land adjoining the said land granted to the said James Holloran, but that said last-named deed did not embrace the land granted to the said James Holloran as aforesaid, but did embrace and convey only a separate and distinct parcel of land known as "Chelsea," fully described in the said deed and the plat thereto annexed; and that the only ground upon which the defendants rested their claim to the land, granted as aforesaid to James Holloran, was that the said land was embraced in a grant from the colonial government of Virginia in 1687 to Joshua Stepp (or Stapp) for 277 acres of land, without pretending or undertaking in any way

to trace their title back to said Stapp; but, on the contrary, the record shows conclusively that the said defendants never received a conveyance for the said land from any one, and never laid any claim thereto by reason of any purchase from any one, but only enclosed it as adjoining the land which they did purchase from McCorkle some three or four years before the rendition of the judgment complained of.

Upon these facts, under the instruction given by the court, the jury brought in a verdict for the defendants; and upon the said verdict the circuit court of the city of Richmond entered its judgment for the defendants and against the plaintiff, James Holloran. The plaintiff asked the court to give to the jury three instructions, which are set forth in his first bill of exceptions, and which it is not necessary to repeat here, and in regard to which we deem it sufficient to say that they do not fully and accurately state the law, and they were properly refused by the court.

The defendants also asked for an instruction, which was refused, and the court gave, in lieu of those asked for by the plaintiff and that asked for by the defendants, the following instruction: "If the jury believe from the evidence that the patent dated October 12th, 1687, to Joshua Stapp for 277 acres of land included the land in controversy, then the land was not after that waste and unappropriated, and the grant of the property in controversy to James Holloran by the patent in evidence was void, and they must find for the defendants. But unless the jury believe that the land in controversy was included in the patent to Stapp, they should find for the plaintiff." To which ruling of the court, in giving the aforesaid instruction and in refusing to give the instructions asked for by the plaintiff, the plaintiff excepted, and this is the ground of the first error assigned.

The instruction given by the court was erroneous. Under the facts as proved in the record, the defendant, Meisel, entered upon the land without title or claim, or even color of title,

and as a mere intruder, upon land not his own, having only "a bare and naked possession without a shadow of right." Holloran, the plaintiff, by his grant from the Commonwealth on the 12th day of February, 1887, as shown in evidence, acquired a *prima facie* title to the land granted, in fee, and was a "purchaser for valuable consideration," with both right of property and right of immediate actual possession. *Clay* v. *White*, 1 Munf., 171; *Green* v. *Liter*, 8 Cranch, 229; 1 Tucker's Comm., 274. The grant of the Commonwealth confers *seisin* without actual entry (1 Munf., 162); and it is a *seisin* in deed and not a mere *seisin* in law which it gives. 8 Cranch, 229.

Meisel's defence against the claim of Holloran by virtue of his grant from the Commonwealth is, that there is an outstanding title in a third person, to whom the land had been previously patented by the colonial government in 1687, one Joshua Stapp. But the copy of the paper, dated October 21st, 1687, put in evidence to prove a patent for the land in controversy, granted to Joshua Stapp by Lord Howard, as colonial governor of Virginia, October 21st, 1687, is without signature, or seal; and shows, upon its face, never to have been executed; and therefore void and inoperative as a grant or instrument of conveyance. It is simply void, upon its face, as a grant or valid patent for the land, taking it out of the category of waste and unappropriated land. And even if the said unexecuted and incomplete paper of the 21st of October, 1687, could, as a matter of law, be operative to pass the title out of the Commonwealth, there was no survey or plot or map, according to the metes and bounds of the said paper, exhibited in evidence, to identify this three and eighty-four one-hundredths acres of land as a part of the 277 acres alleged to have been patented to Stapp two hundred years ago; and which, since 1813, has lain waste, without an owner, or even an occupier or claimant, and without ever appearing upon the land-books, until it was squatted upon by Meisel, who claims under nobody and traces no title from any source. Yet the court, under these circum-

stances, assumed that the paper of October 21st, 1687, is itself a patent, though without signature or seal, and without any evidence of its ever having been executed or delivered, or of possession under it; and, by the instruction given, took the whole question from the jury as to whether a prior patent had been executed and issued for the land ; and, ignoring that question, left to the jury only the question of the identity of the *locus in quo* as part of an assumed valid grant. Thus positively instructing the jury that the defendants had, by the paper of October 21st, 1687, shown an outstanding title, prior and paramount to the validly executed grant of the land to the plaintiff, for valuable consideration, by the Commonwealth, under the sign manual of its governor and its seal of State; and setting up, by the instruction given, an absolute nullity, without signature or seal, as a judicially-adjudicated valid prior conveyance.

1 Hening's Statutes at Large, page 472 (act 87): "That all pattents be draune upp in a fitt forme, relateing to the present government. And that till a seale may be procured, the governour and secretarie for the time being signeing the said pattents, they shall be accompted vallid and authentique in all courtes of justice, as any pattents formerly granted under the colloney seale. And the like for all things that hath usually passed under the seale." Passed April, 1652. See 2 Hening's St. at Large, 245 (act 19).

The paper of October 21st, 1687, was admissible only as a memorandum from the colonial records tending to prove that proceedings had been taken looking to an execution and issuing of a grant, to be followed up, if possible, by evidence tending to show that the grant, so contemplated and begun, was actually executed, issued, and delivered ; but, standing by itself, the copy was a nullity as a grant, and proved nothing but its own abortive existence.

As against the Commonwealth or her grantee, Holloran, in the patent of 1887, there is no evidence in the record tending

to show that a prior patent ever was actually executed, issued, or delivered. The presumption as to an actual issue of a patent stands upon grounds not existing in this case; and such an issue, and the evidence bearing upon it, are for the jury to determine, and not the court.

Where there has been long possession under claim of title, and long continued payment of taxes, a patent may sometimes be presumed. In *Archer* v. *Sadler*, 2 H. & M., 370, there had been sixty years of peaceable and uninterrupted possession, together with payment of quit-rents before, and of taxes since, the Revolution, by the caveator and those under whom he claimed; and it was held that it was a case to be submitted to a jury to decide whether a patent should be presumed to have issued formerly, and whether the facts justified such a presumption.

In the case under review, there is no evidence of the possession of the *locus in quo*, at any time, by anybody, with claim of title; nor even of possession, until Meisel squatted on it a few years ago; and the record shows that no taxes were paid or assessed by anybody for more than seventy-five years, until 1888, when Holloran first paid taxes on it after receiving his patent.

For the error of the court in giving the instruction, and the error in overruling the motion for a new trial upon the ground that the verdict is contrary to the law and the evidence, the judgment complained of must be reversed and annulled.

And the judgment of this court is, that the verdict be set aside, and the case be remanded to the circuit court of the city of Richmond for a new trial; upon which, if the evidence be the same, the jury shall be instructed in accordance with this opinion.

DECREE REVERSED.